# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 14-31288

UNITED STATES OF AMERICA,

United States Court of Appeals
Fifth Circuit

**FILED**

December 30, 2015

Lyle W. Cayce
Clerk

Plaintiff - Appellee

v.

JOSE RIGOBERTO IGLESIAS,

Defendant - Appellant

Appeal from the United States District Court
for the Middle District of Louisiana
USDC:  No. 3:13-CR-00119

Before DAVIS, BARKSDALE, and DENNIS, Circuit Judges.

PER CURIAM:*

At issue is whether the district court erred in denying Jose Rigoberto Iglesias' new-trial motion, based on a claimed violation of *Brady v. Maryland*, 373 U.S. 83 (1963) (addressing non-production of material evidence favorable to defendant).  The claimed violation concerned the Government's not including, in the material it produced, a misdemeanor summons for a Government witness (informant).  AFFIRMED.

---

* Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

No. 14-31288

I.

In February 2014, Iglesias, and his brother, Jose Luis Argueta Iglesias (Argueta), were charged with:  conspiracy to distribute, and possession, with the intent to distribute, 500 grams or more of methamphetamine, in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2 (count one); distribution of methamphetamine (in varying amounts up to 500 grams), in violation of 21 U.S.C. § 841(a)(1) (counts two–seven, and nine); and possession, with intent to distribute, 50 or more grams of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) (count eight).  Before trial, the court granted Iglesias' motion to dismiss count two (distribution of a detectable amount of methamphetamine), after finding that count was based on a transaction outside the dates of the charged conspiracy.

At trial, the Government presented, *inter alia*, testimony from FBI Special Agents, local law enforcement, and, at issue in this appeal, confidential informants Muniz and Honeycutt.  As discussed below, both Muniz and Honeycutt testified they were former drug users who worked with Argueta and Iglesias to buy and sell methamphetamine.  After being approached separately by the FBI, both agreed to participate in undercover, controlled drug transactions.

Muniz testified she was a former crack-cocaine dealer who met Iglesias after purchasing methamphetamine from him on behalf of a friend. Thereafter, from July 2011 to February 2012, Iglesias supplied Muniz with methamphetamine, which she sold to others.  She testified she often deposited the proceeds from drug sales directly into Iglesias' bank account.  Iglesias also introduced Muniz to Argueta and Iglesias' nephew, who supplied her with methamphetamine when Iglesias was out of town.

In May 2012, Muniz was approached by the FBI and agreed to become a confidential informant, assisting with undercover drug investigations.  Muniz

No. 14-31288

testified that, while serving as an informant, she received her methamphetamine supply from Argueta, and continued to buy and sell the drug until he was arrested in February 2013. The Government presented four videotaped methamphetamine transactions between Muniz and Argueta.

On cross-examination, Muniz admitted she was paid for serving as an informant, but claimed she did not receive any "promises" from the FBI. Muniz acknowledged that, while an informant, she was on probation, due to an earlier felony conviction for food-stamp fraud. She also testified that, although she was a former cocaine and prescription-drug user, she was no longer using drugs and never used drugs while on probation.

Honeycutt testified she met Iglesias in 2011, and agreed to sell methamphetamine in order to repay a $20,000 debt owed to him by Honeycutt's former boyfriend. She claimed she sold methamphetamine supplied by Iglesias, and later by Argueta, steadily between September 2011 and December 2012. Similar to Muniz' testimony, Honeycutt stated she would often deposit the proceeds of drug transactions directly into Iglesias' bank account, and received her methamphetamine supply from his nephew when Iglesias was out of town. Honeycutt also used methamphetamine, for which she was arrested in September 2012. After being released on bond, she continued to sell drugs supplied by Iglesias.

Honeycutt was approached by the FBI in March 2013, and agreed to participate in a controlled purchase of methamphetamine from Iglesias later that month. That transaction was the basis for count nine (distribution of 50 or more grams of methamphetamine). The purchase was videotaped, but did not show Iglesias' face. On cross-examination, when questioned about her knowledge of Muniz' drug use, Honeycutt testified, contrary to Muniz' testimony, that she witnessed Muniz smoking crack-cocaine and using methamphetamine, and saw Muniz use drugs while an informant.

3

No. 14-31288

After the Government rested, Iglesias did not present evidence. The jury found him guilty of counts one (conspiracy), three–seven (distribution) and eight (possession with intent to distribute), but could not reach a verdict on count nine (distribution of 50 grams or more of methamphetamine).

According to Iglesias' trial counsel, approximately three months after trial, but prior to sentencing, he inadvertently discovered new information concerning Muniz' criminal history, while teaching a new employee to search for criminal records at the Livingston Parish, Louisiana, courthouse. Results of the search included, *inter alia*, a May 2013 misdemeanor summons for marijuana use, issued by the Livingston Parish Sheriff's Office during the time Muniz served as an informant.

Prior to trial, Iglesias requested "all impeachment, exculpatory evidence, and witness criminal histories". In response, the Government provided a "rap sheet" for Muniz, as well as additional information on her criminal history. The material did not include the misdemeanor summons. Therefore, after discovering the information about Muniz' summons, Iglesias amended his pending new-trial motion pursuant to Federal Rule of Criminal Procedure 33. The amendment claimed the newly-discovered evidence showed a *Brady* violation. Iglesias asserted the information could have been used to impeach Muniz' credibility during her testimony, including to show she was untruthful when she testified that, while serving as an informant, she had neither used drugs nor violated her probation.

Following a hearing, the court denied a new trial. In its order, the court evaluated Iglesias' claims solely under Rule 33, without discussing *Brady*, and determined he "ha[d] not presented . . . any new evidence that would even remotely suggest [he] was unjustly convicted by a jury, let alone reasons that would warrant a new trial". The court ruled, *inter alia*: the Government met its obligation to produce all relevant discovery material concerning Muniz; and

4

No. 14-31288

Iglesias did not exercise due diligence when he failed to conduct a search before trial that would have revealed Muniz' criminal records.  In addition, the court ruled the information would only have been cumulative, as the jury was given ample opportunity to evaluate Muniz' credibility during her testimony, including on cross-examination.  *United States v. Iglesias*, No. 3:13-CR-00119-BAJ-RLB (M.D. La. 3 Sept. 2014).  In October 2014, Iglesias was sentenced, *inter alia*, to 192 months' imprisonment.

## II.

Iglesias claims the court erred in denying a new trial based on the claimed *Brady* violation.  In that regard, he asserts:  he justifiably relied on the Government's incomplete production of information about Muniz' criminal history; and, because Muniz' credibility was the primary issue for the jury in determining Iglesias' guilt, the information affected the outcome of the trial (was material).

A claimed *Brady* violation is a mixed question of law and fact, generally reviewed *de novo*.  *E.g., Bower v. Quarterman*, 497 F.3d 459, 466 (5th Cir. 2007).  The review, however, "must proceed with deference to the factual findings underlying the district court's decision".  *United States v. Brown*, 650 F.3d 581, 589 (5th Cir. 2011).

In *Brady*, the Supreme Court explained:  "[T]he suppression . . . of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution".  373 U.S. at 87.  When the basis for a new trial is a claimed *Brady* violation, the defendant must demonstrate the evidence was:  (1) not disclosed by the prosecution; (2) favorable to the defense; and (3) material. *E.g., United States v. Davis*, 609 F.3d 663, 696 (5th Cir. 2010). Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been

different". *Id.* (internal quotation marks omitted). To reverse a conviction due to suppression of material evidence under *Brady*, Iglesias must show "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict". *E.g., Banks v. Thaler*, 583 F.3d 295, 310 (5th Cir. 2009) (emphasis and internal quotation marks omitted).

Iglesias contends the first two *Brady* elements are satisfied and only the third, materiality, is at issue. He claims Muniz' misdemeanor marijuana summons was significant for impeachment purposes, because it shows Muniz lied when she testified she had not used drugs or violated her probation. Although he concedes Muniz' claims about her drug use were partially impeached by Honeycutt's testimony, Iglesias asserts Muniz' credibility "was not impeached to the degree it could have been had the *Brady* evidence been disclosed".

Additionally, because the marijuana charge was pending at the time of trial, Iglesias contends the information would have helped him show Muniz' motive to testify untruthfully in order to secure leniency from the Government. He further claims: because the jury was not able to reach a verdict on count nine (which was based on a drug transaction between Iglesias and *Honeycutt*), Muniz was the sole witness whose testimony supported the counts for which he was convicted. In that regard, had her credibility been impeached, Iglesias asserts he would not have been convicted of any charged offense. This, he maintains, is sufficient to show the evidence was material: a reasonable probability the outcome of his trial would have been different.

The Government counters that any damage to Muniz' credibility was already achieved by Iglesias' cross-examination about her other, more serious offenses. Further, it contends Honeycutt's testimony provided sufficient evidence of Iglesias' role in the overall conspiracy to support his conviction;

therefore, evidence of Muniz' marijuana summons would not have changed the outcome of the trial.

For the reasons that follow, and even assuming, *arguendo*, Iglesias demonstrates the first two elements under *Brady*, he has *not* shown materiality: "a reasonable probability that, had the evidence been disclosed to [Iglesias], the result of the proceeding would have been different". *Davis*, 609 F.3d at 696. In that regard, "[s]uppressed evidence is not material when it merely furnishes an additional basis on which to impeach a witness whose credibility has already been shown to be questionable". *Felder v. Johnson*, 180 F.3d 206, 213 (5th Cir. 1999) (quoting *United States v. Amiel*, 95 F.3d 135, 145 (2d Cir. 1996)); *see also Thaler*, 583 F.3d at 323. As noted by the district court, Iglesias had the opportunity while cross-examining Muniz to question her, including challenging her credibility, regarding: her use, and history of selling, drugs; her prior felony conviction for food-stamp fraud and current probation; her part in the charged conspiracy; and the nature of the payment she received from the Government for serving as a confidential informant.

Further, as stated *supra*, Iglesias concedes Muniz' testimony denying drug use was partially impeached by Honeycutt, who testified about Muniz' use of crack-cocaine and methamphetamine. In that regard, the jury was made aware that the truthfulness of Muniz' testimony was in question. Iglesias' claim that Muniz' credibility "was not impeached to the degree it could have been", even if correct, is insufficient to establish materiality. Had the evidence of the marijuana summons been disclosed, it merely would have given Iglesias an additional basis for Muniz' lack of credibility. *See Thaler*, 583 F.3d at 323. Given all of the other evidence concerning Muniz' criminal history, the impact of the misdemeanor marijuana summons would have been minimal.

Moreover, contrary to Iglesias' contention, Muniz was not the only witness who provided testimony regarding Iglesias' participation in drug-

No. 14-31288

trafficking, and the conspiracy for which he was convicted. Local law enforcement and FBI Special Agents testified about their investigation of Iglesias; and, as described above, Honeycutt provided testimony that was factually similar to Muniz'. Honeycutt's testimony provided extensive detail about Iglesias' involvement, including her receiving methamphetamine directly from him, and depositing cash proceeds from drug transactions into his bank account.

In sum, given, *inter alia*, Honeycutt's testimony, and the minimal impact of the marijuana summons' being cumulative impeachment evidence to demonstrate Muniz' lack of credibility, the additional evidence at issue falls far short of putting the whole case in "such a different light as to undermine confidence in the verdict". *Id.* at 310 (emphasis omitted).

## III.

For the foregoing reasons, the judgment is AFFIRMED.

8